JOAQUÍN FUERTES FERNÁNDEZ, Appellant, *v.* PLANNING BOARD OF PUERTO RICO, Respondent.

No. 33. Argued February 1, 1954.—Decided June 1, 1954.

*Rodríguez Ema & Rodríguez Ramón,* for appellant. *Rafael R. Fuertes Garzot* and *A. Sandín del Manzano,* for respondent.

MR. JUSTICE SIFRE delivered the opinion of the Court.

On November 13, 1952 appellant presented to the Planning Board of Puerto Rico a declaration of intention to subdivide into two different lots a parcel of land consisting of 300.36 square meters, located in Santurce, Puerto Rico, at the intersection of Los Ángeles and Machín Streets, on which two houses are erected. According to appellant, its owner, Ramón Fernández, constructed in 1923 on the rear of that lot a frame house fronting Machín St., then known as Victoria St.; that after Fernández' death, his wife married appellant, who from 1930 to 1931 built on the lot a concrete house and garage on the portion fronting the junction of Los Ángeles and Machín Streets. Appellant contends that as a result thereof, the house owned by him, which he erected, was standing on a lot belonging in part to his wife and in part to Ramón Fernández' daughters, and that in 1946 "he made an agreement with his wife and the daughters by her first marriage, whereby the heirs of Ramón Fernández

López" transferred to him the portion of the lot occupied by the house which he erected; that "the deed embodying the agreement was unrecordable because it was executed subsequent to September 4, 1944"; [1] and that subdivision was sought in order to divide the lot of 300.36 meters into two lots, so that appellant's house would stand on a lot of 166 square meters and the one constructed by Ramón Fernández on a lot of 134.36 square meters, thereby "legalizing the factual situation existing since 1931, and he would be able to liquidate the community property created, first, by the death of Ramón Fernández, his marriage (appellant's) to the widow, and recently by the latter's death."

The Board disapproved the proposed subdivision, which it thereafter confirmed after a hearing on reconsideration, for the following reasons:

"After an analysis of the questions raised and in view of the evidence introduced, we arrive at the following findings of fact and conclusions of law:

"1.—That the proposed lots, as far as area is concerned, are below the minimum required in § 51 of the Subdivision Regulations.

"2.—That the yards to be allotted to the constructions standing on those lots do not conform to the provisions of § 28 of the Zoning Regulations, and likewise the said constructions occupy an area exceeding 50 per cent of the area of each lot, in violation of the provisions of that Section.

"3.—That the receipt submitted for the taxable year 1923–24 covers the tax paid on the lot sought to be divided, showing only one house of construction thereon.

"4.—That the notice of assessment submitted shows the existence of a house and garage on the lot in the year covered by such notice.

"5.—That the proposed subdivision would result in the formation of lots which do not conform to the character of the vicinity, and would also eliminate a lot which meets such requirement..

[1] The Subdivision Regulations adopted by the Board on June 16, 1944, took effect on that date.

"6.—That the existence of two constructions on the lot submitted prior to September 4, 1944, has not been established, and even assuming that it was so established, it would not imply the existence of an actual segregation of the proposed lots.

"7.—That in view of this factual situation, both the Subdivision and the Zoning Regulations are applicable in the instant case, and this Board must therefore accomplish the purposes for which it was created by applying such Act and Regulations."

■■■ Appellant testified and offered documentary evidence at the hearing. He testified that there are two houses standing on the lot of 300.36 meters, one of which was erected in 1923 by Ramón Fernández and the other by him "in 1930 to 1931"; that the portion of the lot which is occupied by the latter house was conveyed to him under the aforesaid agreement made in 1946; that he has paid taxes on that house since 1931–32; that the two houses have different numbers.

The documentary evidence consisted: (*a*) of a certified copy of the deed whereby Ramón Fernández purchased the lot of 300.36 square meters, in which it is set forth that it was acquired in 1921 and that "it was segregated from a property devoted to lots, from which several lots have been segregated"; [2] (*b*) of a receipt issued on August 9, 1949 by the Department of Finance, in the name of Ramón Fernández, evidencing payment of the property tax for the first semester of July to December 31, 1949, on a lot of *300.36 square meters*, and *a house valued at $500*, in which reference is made to return No. 3291 for 1923–24; (*c*) a certified copy of the tax return for the purposes of the property tax for the year 1931–32, sworn to by appellant and filed with

---

[2] Appellant contends that the section where the lot of 300.36 meters is located "was known as Urbanización de los Hijos de Bolívar, and was urbanized sometime in 1921, when it was subdivided and the lots segregated therefrom sold, and that the lot on which petitioner's house stands is one of such lots."

the Department of Finance. The house mentioned in that return is a concrete house with garage, valued at *$2,100*, and it is stated that *it stands on a lot owned by Ramón Fernández, which is not included in the notice.* The boundaries of the house, according to the notice, are: North, Victoria Street; South, Ramón Fernández; East, Ramón Fernández; West, Ángeles Street. Victoria Street, as has been said, is now called Machín Street. That was the notice to which appellant referred when testifying that he had paid taxes since 1931–32 on the house built by him.

The Board, as has been seen, was of the opinion that "the existence of two constructions on the lot submitted prior to September 4, 1944 has not been established, and even assuming that it was so established, it would not imply the existence of an actual segregation of the proposed lots."

There is not the slightest doubt that there are two constructions standing at present on the lot of 300.36 meters. This was so testified by appellant and it so appears from the report of the "technical inspector" of the Board filed in the record. According to that report, *a frame structure and another concrete structure are standing on the said lot.* The question is whether both constructions were erected prior to September 4, 1944. The appellant, as already stated, asserted that they were and his assertion is corroborated by the documentary evidence. Appellant's evidence was in no way controverted and, in our opinion, it clearly proves that the house appraised at $500 stood on the lot by 1923–24, and that the concrete house belonging to appellant was erected in 1931–32.

The Board erred in concluding otherwise. The power of this Court to review the acts of that body is limited exclusively to questions of law. If the weighing of the evidence by the Board is arbitrary, that would constitute an error of law. *Acosta* v. *Planning Board*, 71 P.R.R. 540, 543. We are convinced that in the case at bar the error

committed in concluding that appellant had failed to establish that two houses stood on the lot of 300.36 meters before September 4, 1944, is an error of law.

██ It having been proved, as was actually done, that there are two constructions standing on the lot in question which were erected prior to the afore-mentioned date, we believe that the cases of *Fortunet* v. *Planning Board*, 67 P.R.R. 245, and *Acosta* v. *Planning Board, supra*, are applicable here.

True, "that the proposed lots, as far as area is concerned, are below the minimum required in § 51 of the Subdivision Regulations," as alleged by the Board, since that Section provides that lots for residential purposes shall have an area of not less than three hundred (300) square meters, and the segregated lots would have, as has been seen, 166 and 134.36 square meters respectively. It is also true "that the yards to be allotted to the constructions standing on those lots do not conform to the provisions of § 28 of the Zoning Regulations, and likewise that the constructions occupy an area exceeding 50 per cent of the area of each lot, in violation of the provisions of that Section, but that situation has actually existed since before the enactment of the Act creating the Planning Board, and was not brought about by the segregation made under the 1946 agreement referred to by appellant. That situation cannot be changed. According to the report of the Board's technical inspector, the area of the lot cannot be extended. Likewise, the yards of the segregated lots cannot be extended either. This situation, we repeat, existed long before the Board was created. In view of this legal situation, we do not see what prejudice may be caused to the general welfare solely because appellant seeks to legalize an existing situation, by recording in the Registry of Property in his name the house which he erected in 1930–31 as well as the lot of 166 meters on which it stands. It appears from the technical inspec-

608

tor's report that the property has a paved street with a roadway seven meters wide and a curb, water, electricity, sewer, sidewalks and good sanitary conditions.

In view of the circumstances of the case at bar, where "the purpose is not to obtain the approval of a proposed subdivision for new buildings but to legalize a factual situation which has existed for more than twenty years," *Fortunet* v. *Planning Board, supra,* we are of the opinion that the Board erred in failing to apply § 79, formerly § 51, of the Subdivision Regulations.

The order appealed from will be vacated and the case remanded for further proceedings.